**William TURNER, Yvonne Ruffin, James Oeschle and Gladys Woodward, on behalf of themselves and others similarly situated,**

**v.**

**CITY OF PHILADELPHIA and Thomas Costello, Prisons Commissioner.**

**No. CIV. A. 98–2990.**

United States District Court, E.D. Pennsylvania.

April 17, 2000.

Richard P. Coe, Jeffrey A. Guth, Law Dept., City of Philadelphia, Philadelphia, PA, for Plaintiffs.

Daren B. Waite, Raymond A. Kresge, George A. Voegele, Jr., Albert L. D'Attilio, Philadelphia, PA, for Defendants.

### MEMORANDUM

WALDMAN, District Judge.

The plaintiffs, on behalf of themselves and 231 others, are suing the City of Philadelphia and Thomas Costello, the City Prisons Commissioner, for compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs are current or former correctional officers in the City prison system. They seek $1.4 million in overtime back pay for time spent changing into and out their uniforms, another $1.4 million in liquidated damages, attorney fees and a court order requiring the City to pay for change time hereafter. Plaintiffs claim that the City's failure to compensate them for this change time constitutes a violation of the FLSA.[1]

---

1. Interestingly, the lead plaintiff, William Turner, did not work as a correctional officer

during the time period covered by this lawsuit and no longer works for City. He would not

Presently before the court is defendants' motion for summary judgment.

Under the FLSA, employers may employ an employee for no longer than forty hours per week unless such employee receives overtime compensation for the additional time at a rate of at least one and one-half times the employee's regular rate of pay. *See* 29 U.S.C. § 207(a)(1). There is an exception to this general rule, however, for employees who are employed under a bona fide collective bargaining agreement. In determining the number of hours for which an employee is employed, "there shall be excluded any time spent in changing clothes" when such time is "excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. § 203(*o*).

It is uncontroverted that there is no express provision regarding compensation for uniform change time in the collective bargaining agreement governing the parties' employment relationship. The controlling issue is whether the uniform change time is excluded from compensable work hours because of a "custom or practice under a bona fide collective-bargaining agreement."

From the competent evidence of record, as uncontroverted or otherwise viewed in the light most favorable to plaintiffs, the pertinent facts are as follow.

Defendants require correctional officers to wear official uniforms while performing their jobs. The officers are prohibited from wearing their uniforms while off-duty or while off of prison property and thus must change into and out of their uniforms on prison premises. Plaintiffs spent or spend two and one-half hours per week on average changing into and out of their uniforms. This time is not included in their scheduled work shifts.

City correctional officers are organized under the American Federation of State, County and Municipal Employees District Council 33, Local 159B (the "Union"), and are employed pursuant to a collective bargaining agreement between the Union and the City. Every collective bargaining agreement between the parties over a period of thirty years, including the current one, has been silent as to compensation for uniform change time.

In his then capacity as President of the Union, William Turner proposed compensation for change time to the Commissioner and Deputy Commissioner in labor management meetings.[2] In Mr. Turner's words, this also "was one of the things that had been brought to the table" in discussions with William Grab, then Labor Relations Administrator for the City. The Union, however, elected not to press for compensation for uniform change time in formal collective bargaining negotiations. The Union did formally negotiate for other uniform related and pre-shift compensation. The Union secured a uniform maintenance allowance and overtime compensation of one hour per week for time correctional officers spent at required pre-shift roll calls.

Neither the FLSA nor its implementing regulations define the terms "custom" and "practice." The term "custom" suggests an "ongoing understanding with some continuity," or "an ongoing, even if recent, course of conduct." *Arcadi v. Nestle Food Corp.*, 38 F.3d 672, 675 (2d Cir.1994). A "practice" can also include understandings by the parties about future conduct. *Id.*

For some thirty years, with the Union's acquiescence, the City has not compensated correctional officers for change time. This clearly constitutes a custom and practice. *See Hoover v. Wyandotte Chemicals Corp.*, 455 F.2d 387, 388 (5th Cir.) (acquiescence for four years in limited compensation for clothes changing time constitut-

be entitled to recover even if plaintiffs were to prevail.

2. Mr. Turner was President of the Union for three years between June 1994 and June 1997.

ed custom and practice), *cert. denied* 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972); *Saunders v. John Morrell & Co.,* 1991 WL 529542 at 4 (N.D.Iowa Dec.24, 1991) (custom and practice established when for five years clothes changing time not compensated); *Williams v. W.R. Grace & Co., Davidson Chem. Div.,* 247 F.Supp. 433, 435 (E.D.Tenn.1965) (history of exempting clothes changing from compensation established custom and practice). Plaintiffs contend, however, that to constitute a "custom and practice under a bona fide collective-bargaining agreement," the issue must have been raised in formal collective bargaining negotiations.

Neither the statute nor the regulations define the term "under a bona fide collective-bargaining agreement," and no court has squarely defined the term. Plaintiffs rely on a few cases in which courts noted some history of negotiation regarding change time which had in fact occurred. No court, however, has held that the absence of such formal negotiations precludes the existence of a requisite custom or practice.

In one of the cases relied on by plaintiffs, the Court discussed negotiations regarding change time in the context of rejecting plaintiffs' contention that such negotiations obviated an existing custom and practice. *See Hoover,* 455 F.2d at 389. The employer in *Hoover* paid employees for 15 minutes of change time. The Court held that the union's acquiescence for four years constituted a custom and practice unaffected by the union's demand in subsequent negotiations for compensation for actual change time of 25 minutes. The Court held that in the face of a contrary custom or practice, employees may obtain compensation for change time only by later bargaining successfully for it and not that there can be no custom or practice under § 203(*o*) without formal negotiation. What the Court found significant was not the act of negotiation but "the union's failure to press its demand to conclusion," and stated that "what a union fails to achieve through the process of collective bargain-

ing [should not] be delivered to it under the provisions of the [FLSA]." *Id.* It would follow with greater force that a union· cannot overcome a custom or practice with informal requests or proposals.

In another case, the Court discussed negotiations regarding change time because it was in the course of such negotiations that an understanding sufficient to constitute a practice arose. *See Arcadi,* 38 F.3d at 675. The Court did not hold that there can be no understanding and no practice or custom without formal negotiation. Indeed, the Court suggested that acquiescence may be implied when a union declines to negotiate for compensated change time while negotiating other wage and hour issues. *See id.* at 674 ("the provision of a wage scale for working times and the absence of a provision for compensating changing time implies that the latter is not compensable"). *See also In re Department of Agriculture Meat Inspectors,* 1981 WL 22553 (Comp.Gen. July 31, 1981)(relying on Dept. of Labor Field Operation Handbook to conclude without reference to any negotiation that acquiescence in historic non-payment for clothes change time constituted "a custom and practice under the collective bargaining agreement to exclude this time").

Also somewhat instructive are cases arising under the National Labor Relations Act or Railway Labor Act in which courts concluded without reference to actual negotiation that a particular practice or custom can become an implied term of employment through long-standing acquiescence. *See Detroit & Toledo Shore Line R. Co. v. United Transp. Union,* 396 U.S. 142, 154, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969)(a practice may effectively become part of labor agreement if it has "occurred for a sufficient period of time with the knowledge and acquiescence of the employees to become in reality part of the actual working conditions"); *Bonnell/Tredegar Indus., Inc. v. National Labor Relations Bd.,* 46 F.3d 339, 344 (4th Cir. 1995) ("employer's established past prac-

tice can become an implied term of a collective bargaining agreement"); *Railway Labor Executives' Assoc. v. National R.R. Passenger Corp.*, 691 F.Supp. 1516, 1519 (D.D.C.1988)(a practice or custom can become part of labor contract by implication through long-standing observance or acquiescence). *See also Local 159, American Federation of State County and Municipal Employees, D.C. 33 v. City of Philadelphia (Dept. of Prisons)*, AAA Cas. No. 14–390–0488–90–J (March 28, 1990) (in absence of any negotiation regarding permanency of bid shifts, recognition by City for 20 years of permanency of bid shifts constituted practice between parties precluding City from changing shifts).

Plaintiffs have offered no reason to distinguish between acquiescence without formal negotiation and acquiescence after formal negotiation, and such a distinction is not logical. It is illogical to find acquiescence from an unsuccessful attempt formally to negotiate for compensated change time but not from a decision to forego even an attempt to secure such compensation through formal negotiation after unsuccessful informal requests.

The parties' employment relationship is governed by a collective bargaining agreement. Uniform change time is the type of activity which ordinarily would be discussed during collective bargaining negotiations by any union inclined to do so. The Union has negotiated for overtime compensation for pre-shift roll calls and recompense for uniform maintenance.

The correctional officers were well aware that uniform change time was not compensated by the City. The City has never compensated for uniform change time throughout the life of the collective bargaining relationship. The President of the Union requested compensation for change time at labor management meetings. The Union elected not to press the issue in formal collective bargaining negotiations, and never filed a grievance or demanded arbitration regarding this matter. The City's correctional officers have acquiesced over a long period of time in the clothes change policy.

The court concludes that there is a custom and practice in the context of a collective bargaining relationship and under a bona fide collective bargaining agreement to exclude uniform change time from the compensable work hours of City correctional officers. Accordingly, § 203(*o*) is applicable and defendants are entitled to summary judgment.